UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| JIM WESLEY DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:18-cv-00002-JRS-MJD |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**Entry Granting Motion for Summary Judgment
and Directing Entry of Final Judgment**

Plaintiff Jim Wesley Davis, a federal inmate, alleges that the medical staff at the Federal Correctional Institution in Terre Haute, Indiana, ("FCI Terre Haute") provided him inadequate medical treatment following hernia surgery in July 2017. Davis claims that as a result of this inadequate treatment he developed an infection and was hospitalized for several days. Davis brings this suit for money damages against the United States of America under the Federal Tort Claims Act ("FTCA"). The United States seeks resolution of this action through summary judgment. For the reasons explained below, the motion for summary judgment, dkt [31], is **granted**.

**I. Standard of Review**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not

establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e). *See also* Local Rule 56-1(e) (citations to supporting facts required) and 56-1(k) (Notice to Pro Se Litigant at dkt. 33).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh

Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trustees of Indiana University,* 870 F.3d 562, 573-74 (7th Cir. 2017).

## II. Factual Background

Applying the standard set forth above, the following facts are accepted as true for the purpose of resolving the pending motion for summary judgment.

### A. Background

Davis is a federal inmate incarcerated at FCI Terre Haute. He is not a physician, has no medical training, and has never worked in any job relating to medicine

In 2006, Davis had a liver transplant operation at Baylor All Saints Hospital in Fort Worth, Texas. As a result of the liver transplant, Davis has a compromised immune system. He takes cyclosporine, an immunosuppressive drug that is used to prevent organ rejection.

### B. Davis's Hernia Surgery and Post-Surgical Medical Treatment

On May 1, 2017, while a federal inmate, Davis underwent surgery to repair a ventral hernia. This surgery was conducted by Dr. Mark Lynch at Union Hospital in Terre Haute, Indiana. During the May 1, 2017, surgery, Dr. Lynch replaced a piece of exhausted mesh (from Davis's prior hernia surgery) with a new piece of mesh. Dr. Lynch informed Davis that it was normal to retain fluid and have swelling near the surgical area following surgery.

After the hernia surgery, Davis returned to FCI Terre Haute on or around May 4, 2017. On May 8, 2017, Davis was seen at sick call by Heather Mata, a physician's assistant at FCI Terre Haute. During this appointment, Davis requested an increase in his prescription for Percocet. Davis claims that, during this appointment, he told PA Mata that the surgical area was swollen with fluid and purple.

3

On May 24, 2017, Davis had a follow-up appointment at FCI Terre Haute with Dr. Lynch and Tracie Bixler, a registered nurse, to assess his recovery from surgery. Dr. Lynch's notes from the May 24 appointment reflect that Davis was "doing well." Dr. Lynch also noted that there was "no sign of infection" and "[t]he repair seem[ed] very solid." Dkt. 31-7 (medical record).

Nurse Bixler inspected Davis's surgical site during the May 24 appointment. Davis claims that the surgical site was swollen and "black and blue" at this time. Dr. Lynch and Nurse Bixler advised Davis that it was normal to experience swelling and discoloration following hernia surgery.

The records from the May 24 appointment state that, while there was no sign of infection to Davis's surgical site, there was a seroma present. A seroma is a collection of fluid under the surface of the skin, which commonly occurs near the surgical site in the weeks following a hernia surgery. Dkt. 31-19 at p. 2. fn. 2. The presence of a seroma does not necessarily indicate infection. Dkt. 31-18 at p. 3.

On June 5, 2017, Davis was seen again by PA Mata. During this appointment, Davis told PA Mata that his surgical site was swollen and seemed to be draining fluid. Davis further told PA Mata that he believed the area may have become infected. In response PA Mata swabbed the area near the hernia surgical site and had a culture performed on this swab. The results of that culture and swab showed a normal staph skin variant, which is typical of normal skin flora. PA Mata prescribed Davis Bactrim DS, an oral antibiotic used to treat different types of infection caused by bacteria. *See* dkt. 31-8 (clinical encounter record).

On June 12, 2017, Davis had another appointment with PA Mata. PA Mata noted the following:

Inmate was seen in sick call for recheck on incision and hernia repair site. Inmate

> has already had one follow up with the surgeon and a seroma was noted at that visit. It appears that the seroma is still present and this is what the inmate is concerned about. A culture was taken at last visit and normal staph skin variant was found – inmate was put on Bactrim due to his past medical health history.

Dkt. 31-9 (clinical encounter record). In order to detect whether Davis had any infection, PA Mata had a complete blood count ("CBC") drawn on June 12, 2017. The CBC results showed that Davis's white blood cell count was not outside the normal range. Dkt. 31-19 at 2 (Trueblood Expert Report at 2); Dkt. 31-10 (Hematology report). The fact that the CBC did not show an elevated white blood cell count indicates that Davis did not have an infection as of June 12, 2017. *Id.*

### C. Davis's Treatment at Union Hospital

Davis did not report that he was having any other problems until nearly two weeks later, on July 2, 2017, when he reported to Nurse Haddix that he was experiencing chest pains, dizziness, and vomiting. Dkt. 31-2 (Davis Dep. 99:4–101:20). Nurse Haddix sent Davis to the Union Hospital emergency room for evaluation and treatment. Dkt. 31-12 (Clinical Encounter Record).

Davis was admitted to Union Hospital, where he received intravenous antibiotics. Dkt. 31-9 at p. 3. While at Union Hospital, Davis was seen by an interventional radiologist who performed a CT guided aspiration of fluid collection on his abdomen. *Id.* The pathology results of the fluid collected from Davis's abdomen showed no malignant cells or bacterial growth. *Id. See also* dkt. 31-15.

Davis was evaluated by Dr. Lynch at Union Hospital. Dkt. 31-16. Dr. Lynch noted no warmth or redness or other signs of infection in the area of Davis's hernia surgery. *Id.* He noted incidental cellulitis below the surgical area, but indicated such incidental cellulitis "could happen just about any place on [Davis] with his altered immunity." *Id.*

Davis was discharged from Union Hospital and returned to USP Terre Haute on July 11,

2017. Dkt. 31-17. Davis felt better after he was discharged from Union Hospital. Dkt. 31-2 (Davis Dep. at 111:20–112:4).

### III. Discussion

The United States argues that Mr. Davis cannot prevail because he has no expert testimony in support of his allegations of negligent medical treatment and because the United States' expert reports in the record reflect that there was no breach of the standard of care nor is there any evidence of causation to link Davis's post-surgical medical treatment with any infection. Mr. Davis opposes the United States' motion for summary judgment.

Pursuant to the FTCA, "federal inmates may bring suit for injuries they sustain in custody as a consequence of the negligence of prison officials." *Buechel v. United States*, 746 F.3d 753, 758 (7th Cir. 2014). State tort law of the state where the tort occurred, in this case Indiana, applies when determining "whether the duty was breached and whether the breach was the proximate cause of the plaintiff's injuries." *Parrott v. United States*, 536 F.3d 629, 637 (7th Cir. 2008); *see also* 28 U.S.C. § 1346(b). The medical care at issue in Davis's suit occurred in Indiana, so Indiana law applies to this case. Under Indiana law, Davis must prove (1) that the United States owed a duty to him; (2) that the United States breached that duty; and (3) that the breach proximately caused Davis's injuries. *Siner v. Kindred Hosp. Ltd. P'ship*, 51 N.E.3d 1184, 1187 (Ind. 2016). There is no dispute that the United States owed Davis a duty of care in providing adequate medical treatment during his incarceration.

**A. Standard of Care**

The Indiana Supreme Court has explained that, "except in those cases where deviation from the standard of care is a matter commonly known by lay persons, expert medical testimony is necessary to establish whether a physician has or has not complied with the standard of a

reasonably prudent physician." *Culbertson v. Mernitz*, 602 N.E.2d 98, 104 (Ind. 1992). *See also Perry v. Driehorst*, 808 N.E.2d 765, 768 (Ind. Ct. App. 2004) ("Without the presentation of [an] expert medical opinion, the trial court could only conclude that there was no genuine issue of material fact and that summary judgment should be entered for [the medical provider].").

The United States argues that Mr. Davis cannot show there was a breach of the standard of care because he did not disclose any expert in this action. In response, Mr. Davis argues that no expert witness testimony is necessary because he is relying on the doctrine of *res ipsa loquitur* to establish there was a breach of care.

The doctrine of *res ipsa loquitur* "allows an inference of negligence to be drawn from surrounding facts." *Thomson v. Saint Joseph Reg. Med. Ctr.*, 26 N.E.3d 89, 94 (Ind. Ct. App. 2015) (citation omitted). Cases that "do not require expert testimony generally involve the physician's failure to remove surgical implements or foreign objects from the patient's body." *Simms v. Schweikher*, 651 N.E.2d 348, 350 (Ind. Ct. App. 1995). *See, e.g, Ciesiolka v. Selby*, 261 N.E.2d 95 (1970) (finding that jury did not need expert testimony to conclude that doctor negligently left mesh in patient's abdomen). "The rationale underlying these cases is that the facts themselves are sufficient to raise an inference of negligence without expert testimony." *Simms*, 651 N.E.2d at 350.

The United States argues that the doctrine of *res ipsa loquitur* has no applicability to the sort of allegations Davis advances. *See Gearnhardt v. United States*, 2:17-cv-00186-JRS-DLP, 2018 WL 5923923, at *6 (S.D. Ind. Nov. 13, 2018) (holding doctrine of *res ipsa loquitur* "inapplicable" in suit involving medical decision about treatment of infection).

In this case, the United States presented expert testimony that states that given Davis's suppressed immunity an infection could have resulted even in the absence of negligence. Specifically, Gregory Pulawski, M.D., F.A.C.S., is a graduate of Northwestern University Medical

School. He is licensed to practice law in Indiana and is board certified by the American Board of Surgery. Dr. Pulawski testified that Davis has a history of spontaneous skin ulcerations and that any signs of possible infection could be due to "immunosuppression in the presence of chronic skin issues." Dkt. 31-18 at p. 4. In this face of this testimony, Davis cannot rely on the doctrine of *res ipsa loquitur* to defeat summary judgment

Moreover, the undisputed evidence in this case demonstrates that there was no breach of the standard of care with respect to Davis's post-surgical treatment. The facts in this case reflect the medical staff at FCI Terre Haute provided Davis with appropriate medical treatment by giving him antibiotics and Bactrim in light of his compromised immune system and had him transferred to the Union Hospital Emergency Room for further evaluation. Dr. Pulawski opined, "Based on my education, training, and experience as a board-certified surgeon with specialization in gastrointestinal surgery, it is my opinion that the care administered to Mr. Davis relating to his hernia surgery and post-surgical treatment, from May 2017 through July 2017, was medically appropriate and consistent with the standard of care." Dkt. 31-18 at p. 4 (Pulawski Expert Report).

### B. Causation

Next, the United States argues that even if there was a breach, Davis cannot prevail in this case because he has no evidence to prove causation between the United States' actions and Davis's alleged injuries. *Siner*, 51 N.E.3d at 1187. "To prove causation, a plaintiff must present specific facts that would demonstrate that defendant's allegedly negligent behavior caused the plaintiff's injuries." *Gearnhardt v. United States*, No. 2:17-cv-00186-JRS-DLP, 2018 WL 5923923, at *5 (S.D. Ind. Nov. 13, 2018) (citing *Midwest Commerce Banking Co. v. Livings*, 608 N.E.2d 1010, 1013 (Ind. Ct. App. 1993); *Topp v. Leffers*, 838 N.E.2d 1027, 1032 (Ind. Ct. App. 2005) (stating that proving proximate causation requires that the plaintiff show "a reasonable connection between

a defendant's conduct and the damages which a plaintiff has suffered")).

The evidence in this case reflects that Davis did not have an infection in the surgical area. Davis repeatedly complained to FCI Terre Haute staff that he believed the seroma that had developed in the surgical area was evidence of an infection. However, a seroma—which is merely a collection of fluid—is normal following hernia surgery and is not evidence of infection. Dkt. 31-19 at 2 (Trueblood Report at 2); dkt. 31-2 (Davis Dep. 67:16–25). The FCI Terre Haute staff performed a culture on the seroma, the results of which showed no infection. Likewise, once Davis was admitted to Union Hospital, the seroma was again tested via guided aspiration, which showed no malignant cells or bacterial growth. Dkt. 31-19 at 3 (Trueblood Report at 3); dkt. 31-18 at 2 (Pulawski Report at 2). Under these circumstances, Davis cannot show he had an infection by pointing to the seroma.

Additionally, FCI Terre Haute medical staff monitored and tested Davis for signs of infection. Several weeks after his surgery, on June 12, 2017, FCI Terre Haute medical staff had a complete blood count drawn from Davis. The results of that test showed that Davis did not have an infection at the time.

After Davis was admitted to Union Hospital in July 2017, he exhibited some redness of the skin that raised concerns about possible infection. However, that redness "was in fact well away from the actual surgical site and not related to it." Dkt. 31-18 at 2 (Pulawski Report at 2). And, as the physician who examined Davis at the time noted, given Davis's altered immunity, such infection "could happen just about any place on [Davis]." Dkt. 31-19 at 3 (Trueblood Report); dkt. 31-16 at p. 1 (Dr. Lynch's Consultation Report). That conclusion suggests that any infection that Davis did experience was unrelated to his hernia surgery and post-surgical care. The hernia mesh in the surgical site "did not get infected" and "did not have to be removed." Dkt. 31-18 at 2

9

(Pulawski Report).

## IV. Conclusion

In the absence of evidence of a breach of duty or causation, the United States is entitled to summary judgment. The motion for summary judgment, dkt [31] is **granted**. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 8/20/2019

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

JIM WESLEY DAVIS
30453-138
TERRE HAUTE - FCI
TERRE HAUTE FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
P.O. BOX 33
TERRE HAUTE, IN 47808

Jackson Taylor Kirklin
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
tkirklin@usa.doj.gov